JOHN D. KIRBY
CA Bar No. 149496
401 West A Street, Suite 1150
San Diego, CA 92101
Tel (619)557-0100 Fax (619)557-0123

Attorney for Defendant: *KAREN GONZALEZ*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA
### (HONORABLE LARRY A. BURNS)

| | |
|---|---|
| UNITED STATES, <br>     Plaintiff, <br> vs. <br> KAREN GONZALEZ, <br>     Defendant. | CASE NO. <u>20-CR-03388-LAB</u> <br><br> DEFENDANT'S SENTENCING MEMORANDUM <br><br> Date: May 10, 2021 <br> Time: 9:00 am |

## I.
## FACTUAL SUMMARY

Defendant Karen Gonzalez ("Ms. Gonzalez") was arrested at the Otay Mesa Port of Entry on September 30, 2020, as she was attempting to drive into the United States. Ms. Gonzalez was sent to secondary sent to inspection, where agents found approximately 3.58 kilograms of heroin strapped to her body.

Ms. Gonzalez had been hired several days earlier by members of the Mexican street gang "Krazy Ass Mexicans," a local gang that operates in her East Los Angeles neighborhood.[1]  Ms. Gonzalez was recruited for this task while she was skating at a local skate park.  She was told by the gang members that she would be paid $6,000 for crossing an unknown type and quantity of illegal drugs.[2]  Ms. Gonzalez had recently been struggling financially after separating from her son's father and the recent failure of her restaurant business.[3]

A few days after she agreed to make the crossing, she got cold feet and told the gang member who had specifically recruited her that she no long wanted to do it.  However, several gang members later showed up at her doorstep and told her that she had already agreed to do the job and could not back out.[4]

On September 29, 2020, Ms. Gonzalez traveled to Tijuana.  She had been told to pick up the drugs at 9:00 a.m. on September 30 and was worried she would be late if she left Los Angeles in the morning.[5]  Ms. Gonzalez slept in her car that night and went to the spot where she was supposed to pick up the drugs.

---

[1] Presentence Report ("PSR"), para. 18.
[2] PSR, para. 17.
[3] Ms. Gonzalez left her partner due to abuse, which was related to PTSD he suffered from his time as a soldier in Afghanistan.
[4] PSR, para. 18.
[5] PSR, para. 19 – 20.

She went to a park in Tijuana and located the drugs, which had been placed in a bathroom.[6] Ms. Gonzalez wrapped the container of drugs around her waist and drove directly to the Otay Mesa Port of Entry, where she was sent to secondary inspection when the pre-primary agent noticed that her lips were trembling and she was squirming in her seat.[7] At secondary, agents found the drugs hidden on her body.

## II.

## ARGUMENT

Under the advisory Guideline scheme, "district courts have a freer hand in determining sentences" United States v. Trujillo-Terrazas, 405 F.3d 814 (10th Cir. 2005). Thus, "while the Guidelines still exert gravitational pull on all sentencing decisions . . . district courts now have more discretion to tailor sentences to the individual circumstances of a defendant." Id. See also United State v. Menyweather, 431 F.3d 692 (9th Cir. 2005) ("In the 'broader appraisal,' available to district courts after Booker, courts can now . . . have the discretion to weigh a multitude of mitigating and aggravating factors that existed at the time of mandatory Guidelines sentencing, but were deemed "not ordinarily

---

[6] PSR, para. 22.
[7] PSR, para. 4

relevant," such as age, education and vocational skills, mental and emotional conditions, employment record, and family ties and responsibilities.).

### A. Drug Couriers are Evaluated for Minor Role Against Other Participants in the Crime—Not Against 'Hypothetical Average Participants' in Similar Crimes

In 2015, the United States Sentencing Commission passed Amendment 794 regarding adjustments for minor role under USSG § 3B1.2. In amending minor role as it pertained to drug couriers ("mules"), the Sentencing Commission clarified that minor role would be determined according to the actual participants involved in a crime, and not to 'hypothetical average participants. Using a totality of circumstances approach, Amendment 794 permitted a courier to receive the adjustment even if she were deemed essential to the trafficking operation.

As held by the Ninth Circuit in <u>United States v. Quintero-Leyva,</u> 823 F.3d 519 (9th Cir. 2016), Amendment 794 requires consideration of all the following factors:  On remand, the district court was told it "should consider" the factors identified in Amendment 794: (i) the degree to which the defendant understood the scope and structure of the criminal activity; (ii) the degree to which the defendant participated in planning or organizing the criminal activity; (iii) the degree to which the defendant exercised decision-making authority or

influenced the exercise of decision-making authority; (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts; and (v) the degree to which the defendant stood to benefit from the criminal activity.

As discussed in detail below, the facts set forth in the Presentence Investigation Report clearly demonstrate that the defendant's involvement failed to meet any of the criteria set forth in (i) through (iv).

**B. The Facts Clearly Establish That Ms. Gonzalez Was Substantially Less Culpable Than The Average Participant In The Criminal Activity**

As articulated by the Ninth Circuit, the standard to award minor role is met when facts demonstrate that a defendant is "substantially less culpable than the average participant" in the commission of her offense. *United States v. Rodriguez-Castro*, 641 F.3d 1189, 1193 (9th Cir. 2011).  Here, the record before the district court demonstrated that Ms. Gonzalez was a one-time, low-level courier, acting under economic desperation.  Under the facts of their case, Ms. Gonzalez has met her burden by a preponderance of the evidence and is entitled to the two-point downward adjustment for minor role. *United States v. Davies*, 641 F.3d 1424, 1436 (9th Cir. 1994).

The facts clearly demonstrate that Ms. Gonzalez did not understand the scope and structure of the criminal activity. Ms. Gonzalez was also not involved in the planning or organizing of the criminal activity, and had no decision making-making authority or influenced the exercise of decision-making authority. Her involvement in the criminal activity was that of a one-time courier. She had no discretion in performing the acts of transporting the drugs. Finally, she was to be paid a relatively modest fee in view of the ultimate value of the drugs for her minor role.[8]

In sum, Ms. Gonzalez has met her burden of proof that she was "substantially less culpable than the average participant." <u>United States v. Rodriguez-Castro</u>, 641 F.3d 1189, 1193 (9th Cir. 2011). Looking at all the circumstances, the Ms. Gonzalez truly did not understand the nature and scope of the criminal conspiracy of which she was just a small part. She should be granted a two-point downward adjustment for role.

**C. The Facts and Circumstances of their Case Justify a Variance From the Advisory Guideline Range.**

Ms. Gonzalez grew up in a very bad neighborhood in East L.A. She also comes from a broken family, as her mother left her father when she was very

---

[8] According to the National Drug Intelligence Center, the price per ounce of Mexican Black Tar heroin in Los Angeles ranges from $850 -- $1,000. Using the most conservative figure, the value of the heroin she imported would be approximately $107,000.

young due to his physically abuse behavior.  Ms. Gonzalez met him one-time years after he and her mother broke up.

Despite this, Ms. Gonzalez finished high school and is close to gaining her associates degree.  She has worked steadily her entire adult life, both on regular jobs and opened her own businesses.[9]  She currently works in a pet crematorium, dealing with distraught customers whose pets have died.  When Ms. Gonzalez is released, she wants to continue her education and also start a food truck business.

In addition, the Court should also consider the fact that Ms. Gonzalez, after initially agreeing to cross drugs into the United States, thought better of it and tried to get out of doing the job.  Unfortunately, the dangerous gangsters who originally recruited her would not let renege on her agreement with them.  While this does not rise to the level of a duress defense, it should bear on the Court's decision as the appropriate variance in this case.

//

//

---

[9] Ms. Gonzalez also, as pointed out in the PSI, did work in the before her arrest, assisting female entrepreneurs with her local chamber of commerce.  PSR at para. 93.

20-CR-03388-LAB

## III.
## **CONCLUSION**

For the reasons stated above, Ms. Gonzalez respectfully requests that Court to sentence her to twenty-four (24) months in custody in this matter.

Dated:  May 3, 2021                           Respectfully submitted,

/s/ John D. Kirby
JOHN D. KIRBY
Attorney for Defendant
Karen Gonzalez